UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
TOPEKA DIVISION

| | |
|---|---|
| RESER'S FINE FOODS, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>H.C. SCHMIEDING PRODUCE CO., LLC,<br>*et al.*,<br><br>                Defendants. | Case No. 5:16-cv-4150-SAC-KGS |

**MEMORANDUM OF LAW OF H.C. SCHMIEDING PRODUCE CO., LLC
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
FOR THIRD-PARTY DEFENDANTS
MARK A. RESER, PATRICIA J. RESER AND PAUL A. LEAVY**

MORRIS, LAING, EVANS, BROCK
& KENNEDY, CHARTERED
Ryan M. Peck, KS Bar No. 21223
300 North Mead, Suite 200
Wichita, Kansas 67202
Tel: (316) 262-2671
Fax: (316) 262-6226
rpeck@morrislaing.com

and

McCARRON & DIESS
Gregory Brown, NY Bar No. 4366498
707 Walt Whitman Road, Second Floor
Melville, New York 11747
Tel: (631) 425-8110
Fax: (631) 425-8112
gbrown@mccarronlaw.com
*Pro Hac Vice*

*Attorneys for H.C. Schmieding Produce Co., LLC*

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

I.      COUNTERSTATEMENT OF UNDISPUTED FACTS .................................................1

II.     STATEMENT OF ADDITIONAL UNDISPUTED FACTS .........................................4

III.    BACKGROUND ........................................................................................6

IV.     ARGUMENT ........................................................................................6

      A.     Standard of Review....................................................................................7

      B.     History and Requirements of PACA...................................................................9

      C.     Individual Liability Under PACA.....................................................................12

            1.     Movants Have Liability Without Regard to Reser's Ability to Pay ........12

            2.     Schmieding Was Compelled to Name Movants as Defendants...............15

      D.     Movants Have Failed to Establish That There Are Undisputed Material Facts ..15

      E.     Movants Are Not Entitled to Judgment as a Matter of Law ................................16

            1.     A Setoff May Only Be Applied to the Allegedly Breached Contract......17

      F.     Schmieding Is Entitled to Engage in Discovery ...................................................19

V.      CONCLUSION ........................................................................................20

## TABLE OF AUTHORITIES

Supreme Court
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................................*passim*
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................8
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............................8

Courts of Appeals
*Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998) ....................................................8
*Anderson v. Deere & Co.*, 852 F.2d 1244 (10th Cir. 1988)....................................................7
*Applied Genetics Int'l, Inc. v. First Affiliated Secur., Inc.*, 912 F.2d 1238 (10th Cir. 1990) 8
*Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163 (3d Cir. 2010) ......................12
*Bird v. W. Valley City*, 832 F.3d 1188 (10th Cir. 2016) ......................................................8
*Botman Int'l, B.V. v. Int'l Produce Imports, Inc.*, 205 Fed. Appx. 937 (3d Cir. 2006).........13
*Butts v. Aurora Health Care, Inc.*, 387 F.3d 921 (7th Cir. 2004).........................................7
*Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2d Cir. 2007) ...............................13
*Dye v. United States*, 121 F.3d 1399 (10th Cir. 1997)...........................................................8, 16
*Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884 (10th Cir. 1985)..............................................15, 16
*Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184 (10th Cir. 2015) ...................................19
*Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990) ............................................9
*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003) ................................................8
*Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348 (5th Cir. 2000) .....12, 15
*Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1 (1st Cir. 1999) ......................................*passim*
*Hull Company v. Hauser Foods, Inc.*, 924 F.3d 777 (8th Cir. 1991) ....................................9
*Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998) ..............................9, 10
*In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996)............................................................9
*Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir. 1978) .....................................7
*National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.*,
  555 F.2d 778 (10th Cir. 1977) ........................................................................................7
*Nichols v. Hurley*, 921 F.2d 1101 (10th Cir. 1990) ............................................................16
*Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279 (3d Cir. 2006)..........................10
*Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666 (7th Cir. 2002)......................12
*Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79 (2d Cir.2004) ....................................8
*Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677 (10th Cir. 1991)..................7
*Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993) ..............9
*Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997)...........................................12
*Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527 (10th Cir. 1994)..................................7
*Webb v. Allstate Life Ins. Co.*, 536 F.2d 336 (10th Cir. 1976)............................................8
*Weir v. Anaconda Co.*, 773 F.2d 1073 (10th Cir. 1985).......................................................7
*Weis-Buy Servs. v. Paglia*, 411 F.3d 415 (3d Cir. 2005) ....................................................12, 15

District Courts
*Botman Int'l , B.V. v. Int'l Produce Imps., Inc.*,
  2004 U.S. Dist. LEXIS 14659 (E.D. Pa. July 27, 2004)............................................12
*Bronia, Inc. v. Ho*, 873 F. Supp. 854 (S.D.N.Y. 1995).........................................................11, 14
*GFSI, Inc. v. J-Loong Trading, Ltd.*,

2006 U.S. Dist. LEXIS 89448, (D. Kan. Dec. 6, 2006)............................................18
*King v. Hartford Packing Co.*, 189 F. Supp. 2d 917 (N.D. Ind. 2002)................................10
*Kingdom Fresh Produce v. Bexar County (In re Delta Produce, LP)*,
    521 B.R. 576 (W.D. Tex. 2014)................................................................................10
*Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993)..............11, 14
*Red's Mkt. v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339 (M.D. Fla. 2002)...11

Bankruptcy Courts
*Collins Bros. Corp. v. Perrine (In re Perrine)*,
    2007 Bankr. LEXIS 3727 (Bankr. N.D. Ga. Sept. 27, 2007) ....................................11
*Nuchief Sales, Inc. v. Harper*, 150 B.R. 416 (Bankr. E.D. Tenn. 1993)...............................12
*Kuhn v. Wagnon (In re Kuhn)*, 408 B.R. 528 (Bankr. D. Kan. 2009) ...................................18

State Courts
*Microsize, Inc. v. Ark. Microfilm, Inc.*, 29 Ark. App. 49, 780 S.W.2d 574 (1989) ...............18
*Sharp Elecs. Corp. v. Arkin-Medo, Inc.*, 86 A.D.2d 817 (App. Div. 1982)...........................18

Agricultural Decisions
*In re: Craig–Ann Hunts Point Corporation*, 50 Agric. Dec. 1850 (1991) ...........................9
*In re: Kanowitz Fruit and Produce Co., Inc.*, 56 Agric. Dec. 942 (1997)............................9

Statutes
Fed. R. Civ. P. 56...............................................................................................................*passim*
K.S.A. § 84-1-102.............................................................................................................18
K.S.A. § 84-1-103.............................................................................................................18
K.S.A. § 84-2-607.............................................................................................................17
K.S.A. § 84-2-717.............................................................................................................17, 18
Local Civil Rule 7.1..............................................................................................................1
Local Civil Rule 56.1.............................................................................................................1
UCC § 2-607........................................................................................................................17
UCC § 2-717........................................................................................................................*passim*
7 C.F.R. 46.2........................................................................................................................10
7 C.F.R. 46.46......................................................................................................................11
7 U.S.C. § 499a......................................................................................................................1
7 U.S.C. § 499b...................................................................................................................*passim*
7 U.S.C. § 499e...................................................................................................................*passim*

Periodicals and Treatises
H. Rep. No. 543, 98th Cong., 1st Sess. 3 (1983),
    reprinted in 1984 *U.S. Code Cong & Admin News* ("*USCCAN*") 405 .........................9

Defendant/Third-Party Plaintiff H.C. Schmieding Produce Co., LLC ("Schmieding"), by and through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7.1 and 56.1, submits this memorandum of law, counterstatement of undisputed fact and statement of additional undisputed facts in opposition to the Motion (Docket No. 17) (the "Motion") for Summary Judgment for Third-Party Defendants Mark A. Reser, Patricia J. Reser, and Paul A. Leavy ("Leavy;" Mark A. Reser, Patricia J. Reser and Leavy collectively, "Movants").

## I.    COUNTERSTATEMENT OF UNDISPUTED FACTS[1]

1.      Schmieding admits that in its counter-claims against Reser's Fine Foods, Inc. ("Reser's") it alleges that:

a.      the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq*. ("PACA") requires Reser's to hold the proceeds from the sale of produce delivered to Reser's by Schmieding in trust, but Schmieding further alleges the funds are to be held in trust for Schmieding's benefit (Answer, Counter-Claims, Cross-Claims and Third Party Complaint [Docket No. 6] [the "Answer"] ¶ 74);

b.      Reser's has refused to pay trust funds to Schmieding, but Schmieding further alleges that Reser's has failed to deliver trust funds to Schmieding and that such funds are to be held for Schmieding's benefit (Answer ¶ 75); and

c.      Reser's has violated PACA by withholding the trust funds due Schmieding, but Schmieding further alleges that the violation of PACA is merely a result of Reser's failure to make payment of the trust funds it is required to hold for Schmieding's benefit and that the mere failure to make prompt payment, without more, is

---

[1] The paragraph numbers in this section correspond to the paragraphs in the Motion.

unlawful (Answer ¶ 76).

2.      Schmieding admits that Movants' submit an affidavit (Docket No. 17-1) (the "Leavy Affidavit") from Paul A. Leavy ("Leavy") in support of their Motion, but denies the accuracy of the allegations contained in the Leavy Affidavit and denies that the Leavy Affidavit satisfies Movants' *prima facie* burden (Leavy Affidavit).

3.      Schmieding admits that Leavy is the Chief Financial Officer and Treasurer of Reser's and that he alleges that the Leavy Affidavit is based on his personal knowledge, but Schmieding cannot know what is within Leavy's personal knowledge and therefore denies that portion of the statement.

4.      Schmieding admits that it alleges that Reser's should be holding $276,519.87 for celery delivered to Reser's between October 12, 2015 and February 22, 2016, but Schmieding cannot know what is within Leavy's personal knowledge and therefore denies that portion of the statement.

5.      Schmieding admits that it alleges that Reser's should be holding $276,519.87 in trust under PACA, but Schmieding cannot know what is within Leavy's personal knowledge and therefore denies that portion of the statement.

6.      Schmieding admits that it alleges that Reser's should be holding $276,519.87 in trust under PACA, and that Schmieding is entitled to recover accrued interest, attorneys' fees and costs from Reser's, but Schmieding cannot know what is within Leavy's personal knowledge and therefore denies that portion of the statement as well as Movants' implication that Leavy's allegations, without more, constitute evidence in admissible form sufficient to support the Motion.  Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Declaration of Gregory Brown ("Brown

Declaration") ¶ 10, attached hereto as Exhibit 1.

7.      Schmieding denies the statement and Movants' implication that they have submitted evidence in admissible form sufficient to support the statement.  Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Brown Declaration ¶ 10.

8.      Schmieding denies the statement and Movants' implication that they have submitted evidence in admissible form sufficient to support the statement.  Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Brown Declaration ¶ 10.

9.      Schmieding admits that it has named Movants as individual third-party defendants (Answer ¶¶ 99-114).

10.     Schmieding admits the statement and all of its subparts.

11.     Schmieding admits the statement and all of its subparts.

12.     Schmieding admits the statement and all of its subparts.

13.     Schmieding admits the statement.

14.     Schmieding admits the statement.

15.     Schmieding admits the statement.

16.     Schmieding denies the statement and maintains that it is entitled to recover the sum of $276,519.87 from Reser's and Movants, jointly and severally, based on different causes of action.

17.     Schmieding admits that Reser's has not paid Schmieding for celery delivered on November 11, 2015, but denies that Reser's failure to make payment is because the celery was the subject of a recall and hold notice and disputes that Reser's is entitled to withhold payment in

an amount that exceeds the value of the goods delivered on November 11, 2015.  Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Brown Declaration ¶ 10.

18.     Schmieding denies the statement and disputes that Reser's is entitled to withhold payment in an amount that exceeds the value of the goods delivered on November 11, 2015. Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Brown Declaration ¶ 10.

19.     Schmieding denies the statement and maintains that it is entitled to recover the sum of $276,519.87 from Reser's and Movants, jointly and severally.  Because of the procedural posture of this case, Schmieding cannot present facts essential to justify its denial of the statement.  Brown Declaration ¶ 10.

20.     Schmieding admits that it received payment for portions of the produce it delivered to Reser's, but denies that those payments constitute a defense to the allegations contained in the Answer or Schmieding's claims against Movants.  There is no dispute that Reser's has failed to pay for $276,519.87 worth of produce delivered to Reser's by Schmieding. Reser's Statement of Uncontroverted Facts ¶ 8.

## II.     STATEMENT OF ADDITIONAL UNDISPUTED FACTS

1.     Schmieding is licensed under and subject to PACA.  Ex. A; Motion p. 9.

2.     Reser's is licensed under and subject to PACA.  Ex. B; Motion p. 9.

3.     Mark A. Reser is the president of Reser's and is a reported principal on Reser's PACA license.  Exs. B and C; Answer to Third-Party Complaint (Docket No. 18) ("Movants' Answer") ¶ 16.

4.     Patricia J. Reser is the secretary of Reser's and is a reported principal on Reser's

PACA license.  Exs. B and C; Movants' Answer ¶ 17.

5.      Leavy is a reported principal on Reser's PACA license.  Ex. B.

6.      Mark A. Reser is, and since October 12, 2015 was, in a position of control over PACA trust assets in Reser's possession.  Exs. B and C; Movants' Answer ¶ 16.

7.      Patricia J. Reser is, and since October 12, 2015 was, in a position of control over PACA trust assets in Reser's possession.  Exs. B and C; Movants' Answer ¶ 17.

8.      Leavy is, and since October 12, 2015 was, in a position of control over PACA trust assets in Reser's possession. Leavy Affidavit; Ex. B; Movants' Answer ¶ 18.

9.      On or about February 19, 2015, Reser's entered into a Contract of Sale (the "Contract") with Schmieding Inc.  Pursuant to the Contract, Schmieding Inc. agreed to sell to Reser's ninety one truckloads of celery between February, 2015 and January 31, 2016.  Ex. E; Answer ¶ 46; Movants' Answer ¶ 1.

10.      The Contract incorporated a schedule which established the number of loads per month that Reser's would purchase from Schmieding pursuant to the Contract.  Ex. E; Answer ¶ 47; Movants' Answer ¶ 2.

11.      Between October 12, 2015 and February 22, 2016, Schmieding sold and delivered to Reser's twenty five truckloads of celery worth $276,519.87.  Ex. D.

12.      Pursuant to the Contract and incorporated schedule, Schmieding was only obligated to sell six loads of celery to Reser's during the month of November, 2015; however, Reser's needed seven loads of celery from Schmieding.  Ex. E; Answer ¶ 51; Movants' Answer ¶ 5.

13.      Reser's issued purchase order number 838903 to Schmieding for the seventh load of celery, which load was delivered to Schmieding on November 11, 2015 (the "Disputed

Load").  Answer ¶¶ 52, 56 and; Movants' Answer ¶¶ 6,8 and 9.

14.     Schmieding timely preserved its PACA trust rights pursuant to 7 U.S.C. §

499e(c)(4) by including the requisite statutory language on the face of its invoices to Reser's for

all of the loads it delivered to Reser's.  Ex. D.

15.     Schmieding's invoices to Reser's include the following provision: "Interest at

1.5% per month added to unpaid balance.  Interest and attorney fees necessary to collect any

balance due hereunder shall be considered sums owing in connection with this transaction under

the PACA trust."  Ex. D.

16.     The produce delivered by Schmieding to Reser's moved in interstate commerce.

Ex. D; Complaint (Docket No. 1) (the "Complaint") ¶¶ 2, 3, 9 and 15; Answer ¶ 2, 3, 9 and 15.

17.     Reser's has refused to pay Schmieding the sum of $276,519.87 for produce

delivered by Schmieding to Reser's.  Reser's Statement of Uncontroverted Facts ¶ 8; see also

gen., Complaint; Answer; Motion.

### III.     BACKGROUND

The Court is respectfully referred to the Statement of Additional Undisputed Facts, *supra*,

for a summary of the history giving rise to this action.  The accompanying declaration of

Gregory Brown summarizes the brief procedural history of this case.

### IV.     ARGUMENT

Movants rely exclusively on the Leavy Affidavit in their effort to convince the Court that

Reser's has sufficient funds to pay Schmieding, and that such liquidity absolves them of liability

under PACA, but the Leavy Affidavit does not offer a single extrinsic basis for accepting

Movants' contentions.  The self-serving statements in the Leavy Affidavit are unsupported by

any documentary evidence, such as financial statements, that might support Movants' *prima*

---

*facie* case.  Even if the pre-answer and pre-discovery Motion was supported by adequate evidence, Movants could not prove that mere liquidity is enough to defeat Schmieding's claims. PACA requires prompt payment.  The decision of Reser's principals to withhold payment from Schmieding for produce that was delivered, accepted, processed and resold by Reser's is a violation of PACA and is contrary to the requirements of the Uniform Commercial Code.

### A.      Standard of Review

To prevail on their Motion, Movants must prove that there is no genuine dispute as to any material fact, *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1529 (10th Cir. 1994), and that they are entitled to judgment as a matter of law.  *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir. 1991) citing Fed. R. Civ. P. 56(c)(2), now at Fed. R. Civ. 56(a).  However, under no circumstances should summary judgment be predicated solely "on the deposition or affidavit of an interested party [] as to facts known only to him." *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978); see also, *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("self-serving statements in affidavits without factual support in the record carry no weight on summary judgment"); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1248 (10th Cir. 1988) ("The affidavit of interested house counsel is not sufficient to support a summary judgment"); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985); *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.*, 555 F.2d 778, 784 (10th Cir. 1977).  At the very least, the nonmovant should be permitted to engage in discovery to review evidence exclusively in the control of the movant which evidence the movant contends establishes undisputed material facts.  Fed. R. Civ. P. 56(d)(2).

A fact is material only if, under applicable substantive law, it would affect the outcome of the case, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine

only if it "is such that a reasonable jury could return a verdict for the nonmoving party." *Bird v. W. Valley City*, 832 F.3d 1188, 1999 (10th Cir. 2016) (internal punctuation omitted).  Immaterial allegations which have no bearing on the relevant statutory law should be disregarded by the Court. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

The "ultimate burden of persuading the court that there are no genuine issues of material fact always remains on the moving party." *Dye v. United States*, 121 F.3d 1399, 1409 (10th Cir. 1997).  It can discharge this burden only by making a *prima facie* showing in support of its position on a particular issue. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).  If after such an analysis the Court concludes that different ultimate inferences may properly be drawn from the evidence presented by both sides, "the case is not one for summary judgment." *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976).

By contrast, Schmieding has a "limited burden of production," *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84, op. corrected, 511 F.3d 238 (2d Cir.2004), albeit one that requires it to "demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." *Id*.  In parsing the facts presented, the Court must regard as true Schmieding's evidence, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and must draw all reasonable inferences in Schmieding's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Applied Genetics Int'l, Inc. v. First Affiliated Secur., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  But where, as here, the non-movant has not had any opportunity to conduct discovery, the proponent of a motion for summary judgment cannot simply point to an absence of evidence submitted in opposition to the motion as a basis for granting relief. Fed. R. Civ. P. 56(d).  Applying the facts set forth in Sections I and II, *supra*, to the substantive provisions of PACA, this Court must

conclude at the very least that the Motion should be denied. It is respectfully submitted that Schmieding has also shown a high likelihood of success on the merits of its claims against Movants.

###### B.      History and Requirements of PACA

PACA is a remedial statute designed to protect sellers of perishable commodities who, without the statute, would lack any way to secure themselves against non-payment by their customers. H. Rep. No. 543, 98th Cong., 1st Sess. 3 (1983), reprinted in 1984 *U.S. Code Cong & Admin News* ("*USCCAN*") 405, 407. The primary purpose of PACA is to ensure prompt payment to produce suppliers. *In re: Kanowitz Fruit and Produce Co., Inc.*, 56 Agric. Dec. 942, 949 (1997) ("Section 2[4] of the PACA [7 U.S.C. § 499b(4)] requires payment – not good intentions to pay"); *In re: Craig–Ann Hunts Point Corporation*, 50 Agric. Dec. 1850 (1991). As a remedial statute, PACA "should be given a liberal construction to effectuate its statutory purpose." *Hull Company v. Hauser Foods, Inc.*, 924 F.3d 777, 781 (8th Cir. 1991).

In the early 1980's, "Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990). To remedy this problem, Congress amended PACA in 1984 by creating a statutory trust in Section 499e to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *USCCAN* 405, 406. The trust provisions require a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. Section 5 of PACA, 7 U.S.C. § 499e(c)(2); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-*

*Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993). Thus, Congress gave PACA two features designed to protect produce dealers: (1) the prompt payment provisions of Section 2 and (2) the trust provisions of Section 5.

Under the prompt payment provisions, failure to make full payment promptly to the trust beneficiaries, by itself, is unlawful. 7 U.S.C. § 499b(4).[2] The plain language of the statute makes it a violation of PACA merely to fail to make prompt payment for the produce received. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 282 (3d Cir. 2006) ("A buyer's failure to tender prompt payment triggers civil liability"); *Idahoan Fresh*, 157 F.3d at 199; *King v. Hartford Packing Co.*, 189 F. Supp. 2d 917, 925 (N.D. Ind. 2002); *Kingdom Fresh Produce v. Bexar County (In re Delta Produce, LP)*, 521 B.R. 576, 583 (W.D. Tex. 2014). PACA regulations specify that, as applicable in this case, "prompt payment" must be made "within 10 days after the day on which the produce is accepted." 7 C.F.R. 46.2(aa)(5). Under Section 499e, the section of PACA entitled "Liability to persons injured," a produce dealer that "violates any provision of section 499b of [PACA] shall be liable to the person or persons injured thereby for the full amount of damages … sustained in consequence of such violation." 7 U.S.C. § 499e(a). There is nothing in Sections 499b, 499e or the regulations that require a produce purchaser to be illiquid before it can be deemed to have violated the prompt payment provisions of PACA.

Under the trust provisions, Section 499e(c), produce dealers are required to hold any receivables or proceeds from the sale of produce "until full payment of the sums owing in connection with such transaction has been received by such unpaid suppliers, sellers, or agents." 7

---

[2] The statute provides in relevant part:
>   It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:
>   * * *
>   (4) For any … dealer … to fail or refuse truly and correctly to … make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had.

U.S.C. § 499e(c)(2).  Pending payment, produce dealers such as Reser's are required to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."  7 C.F.R. 46.46(d)(1).  Any "act or omission inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act, (7 U.S.C. § 499b)."  *Id.*  Dissipation of trust assets is defined as "any act or failure to act … which could prejudice … the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. 46.46(a)(2).  Thus, a produce dealer can be in violation of PACA's trust provisions merely by prejudicing a produce supplier's ability to be paid.  *Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999) ("a PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier") citing *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993); *Collins Bros. Corp. v. Perrine (In re Perrine)*, 2007 Bankr. LEXIS 3727, *4 (Bankr. N.D. Ga. Sept. 27, 2007) (05-10816-WHD) ("Use of the trust assets for any purpose other than paying the produce seller, including the payment of legitimate business expenses, is a violation of the fiduciary duties imposed by PACA"); *Red's Mkt. v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002) ("case law generally holds that an individual in control of PACA trust assets may be liable for failure to preserve the *res* of the trust without regard to whether the failure was intentional or whether the individual was an otherwise responsible corporate officer"); *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 861 (S.D.N.Y. 1995) ("failing to turn over the trust assets when payment is due to the produce sellers breaches [produce debtor's] fiduciary duty to make the trust assets 'freely available' to the plaintiffs").  This penalty furthers not only PACA's trust provisions, but the prompt payment provisions outlined above.  Failure to

comply can result in penalties not only on the corporate entity that received the goods, but that company's officers and directors who were in a position to make payment to the produce supplier.

### C.    Individual Liability Under PACA

Individual liability under PACA arises not by virtue of any express statutory provision, but because PACA creates a fiduciary relationship between the produce seller and purchaser.  The "focus of fiduciary liability is upon the actor responsible for the act rather than the corporate form.  Liability is premised upon the person who actually caused the harm." *Nuchief Sales, Inc. v. Harper*, 150 B.R. 416, 419 (Bankr. E.D. Tenn. 1993).  The basis for this holding is the common law trust principle that fiduciary duties are not carried out by a business or corporation, but by the individuals who are responsible for the operation of the entity.  *Id.*  Based on this jurisprudence, courts consistently hold that an officer or director of a produce company who is in a position of control over the PACA trust assets, is personally liable for failure to pay trust funds.  *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 169 (3d Cir. 2010); *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 420-421 (3d Cir. 2005); *Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 669 (7th Cir. 2002); *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).  Thus, an individual who controls a produce purchaser's purse strings can be liable to produce suppliers for violation of either the prompt payment provisions or the trust provisions of PACA.  See, *Hiller Cranberry Prods., et al., supra.*

1.    Movants Have Liability Without Regard to Reser's Ability to Pay

There is no requirement, as Movants contend, that "PACA liability attach[] first to the licensed seller of perishable agricultural commodities."  Motion p. 11.  To support this contention, Movants rely on *Botman Int'l , B.V. v. Int'l Produce Imps., Inc.*, 2004 U.S. Dist.

LEXIS 14659 (E.D. Pa. July 27, 2004) (99-cv-5088 [RBS]), citing directly from it in this instance; however, the holding on which they rely was reversed in part on appeal. *Botman Int'l, B.V. v. Int'l Produce Imports, Inc.*, 205 Fed. Appx. 937 (3d Cir. 2006).

In *Botman*, a case brought under the trust provisions of PACA, the District Court found the individual defendant, Keijer, liable for violating his fiduciary duty as PACA trustee because although the corporate defendant had accounts receivable of $581,774.00 (an amount sufficient to satisfy the debt of $433,073.54), the accounts receivable were illiquid and were thus not "freely available" to satisfy the debt.[3]  The Third Circuit affirmed, finding that notwithstanding the fact that the corporate defendant had sufficient assets to pay its produce suppliers, the individual defendant was still liable for the debt.  Thus, the Court implicitly rejects Movants' contention that personal liability can extend to a produce debtor's principals only if the "seller's assets are insufficient to satisfy the liability."  Motion at p. 10 citing the District Court decision.

The Second Circuit expressly rejects that argument in *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2d Cir. 2007).  There, the individual defendant argued that the District Court incorrectly held him liable to PACA trust creditors for violation of the statute's trust provisions because the corporate debtor's assets included one million dollars owed under a factoring agreement and millions of dollars in uncollected accounts receivable.  The Second Circuit rejected this argument, finding that even though the corporate debtor's assets were substantial, the mere fact that the assets were not freely available for prompt payment to trust beneficiaries subjected the individual defendant to liability.

---

[3] Keijer argued to the Third Circuit that "liquidity is an improper benchmark when analyzing maintenance of a PACA trust." *Id.* at 943 (emphasis added).  The Third Circuit rejected this argument, concluding that the "bright line of liquidity is sensible" in such an analysis.  *Id.*  Movants misconstrue the importance of this statement, basing their entire motion on the concept of liquidity.  The Third Circuit here, and at footnote seven, is merely reaffirming that liquidity may be relevant in determining whether trust assets have been dissipated, not whether liquidity can defeat personal liability.

MEMORANDUM OF LAW OF IN OPPOSITION | 13

These holdings, though referencing liquidity, do not make liquidity the touchstone for personal liability under PACA, as Movants contend.  The discussion of liquidity found in *Botman*, *Gargiulo* and others arises from the simple fact that those cases, and indeed the vast majority of PACA cases, primarily examine an alleged violation of the statute's trust provisions. Trust cases general arise only when the produce purchaser is insolvent or near-insolvent and trust funds have been dissipated or are at risk of dissipation.  As a result, the prompt payment analysis is omitted, or at least secondary to the trust violation analysis, because prompt payment from an insolvent company is by definition impossible (an insolvent company is unable to pay its debts in the ordinary course of its business).  These discussions of liquidity do not reverse the jurisprudence which establishes that individual liability can attach to a principal "who uses the trust assets for any purpose other than repayment of the supplier."  *Hiller Cranberry Prods.*, 165 F.3d at 9.  Mere "use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities," *Morris Okun, Inc.*, 814 F. Supp. at 348, and "failing to turn over the trust assets when payment is due" *Bronia, Inc.*, 873 F. Supp. at 861, is sufficient to impose liability on the PACA trustees.  Thus, there is no requirement that Schmieding prove that Reser's is insolvent or illiquid before this Court will impose liability on Movants for violation of PACA.

More importantly, however, is the fact that in all the cases on which Movants rely, the Court was in a position to assess the financial condition of the produce debtor.  Here, the only document Movants have offered as evidence of their alleged liquidity is the self-serving Leavy Affidavit.  And because of the procedural posture of this case, Schmieding has been unable to take any discovery and is thus unable to tender any contradictory evidence.  See, Fed. R. Civ. P. 56(d).  Therefore, even if this Court believes that liquidity is relevant to an analysis of Movants'

liability to Schmieding, Movants could not prevail on the Motion because they have failed to establish that they are "entitled to judgment beyond a reasonable doubt," *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).

2.     Schmieding Was Compelled to Name Movants as Defendants

Even if this Court believes that Movants can only be secondarily liable for the debt to Schmieding, it should still refuse to enter judgment against them at this early stage in the litigation because Schmieding's failure to include them as defendants could have been fatal to its efforts to obtain any recovery against the principals of Reser's.  In *Weis-Buy*, 411 F.3d at 415, a case relied on by Movants, the defendant produce company filed for bankruptcy protection, but the individual principals of the produce company did not.  *Id.* at 418-19.  The PACA creditors did not pursue the individual principals until after receiving a distribution in the company's bankruptcy case.  *Id.*  In the interim, the statute of limitations expired and the PACA creditors lost their ability to pursue the individuals for the remaining balance due under PACA. *Id.* at 423-24.  The Third Circuit held that the PACA creditors should have brought suit against the produce debtor and its principals simultaneously, and continued to pursue the individuals after the company filed for bankruptcy protection, as was the case in *Golman-Hayden Co., Inc.*, 217 F.3d at 348.  As a result, failing to include Movants as defendants in this action could be prejudicial to Schmieding's rights as a PACA trust beneficiary, and it is submitted that it would, at the very least, be inequitable to enter judgment dismissing them from this litigation before any discovery has taken place.

## D.     Movants Have Failed to Establish That There Are Undisputed Material Facts

Although Schmieding rejects Movants' contention that they can only be liable to Schmieding if Reser's were illiquid, this Court can deny the Motion without having to decide the

issue.  The evidence tendered on a motion for summary judgment must prove the movant's case

beyond a "reasonable doubt," *Ellis*, 754 F.2d at 885; however, the only factual basis offered in

support of the Motion is the self-serving statement in the Leavy Affidavit which avers that

"Reser's currently has freely available liquid assets in an amount sufficient to satisfy the

$276,519.87 claimed by Schmieding, together with any reasonable amount of attorneys' fees,

interests, and costs which might be awarded against Reser's."  Leavy Affidavit ¶ 8.  These are

conclusory, unsupported allegations, and have no probative value.  *Nichols v. Hurley*, 921 F.2d

1101, 1113 (10th Cir. 1990).

        Leavy fails to explain how or where these purportedly-liquid assets are being held so the

court can assess their liquidity, and offers no details about what steps are being taken to ensure

they remain liquid pending judgment.  Moreover, Movants offer no documentary evidence to

support their bald assertions.  They fail to include readily available proof – such as bank

statements – that would constitute something beyond mere inadmissible hearsay.  Because the

Leavy Affidavit is incapable of carrying Movants' "burden of persuading the court that there are

no genuine issues of material fact," *Dye*, 121 F.3d at 1409, the Motion must be denied.  *Butts*,

387 F.3d at 925 ("self-serving statements in affidavits without factual support in the record carry

no weight on summary judgment").

### E.      Movants Are Not Entitled to Judgment as a Matter of Law

        The Motion is also deficient because it is premised on the notion that Reser's is justified

in withholding the sum of $276,519.87.  In other words, Movants contend that, as a matter of

law, they cannot have violated PACA because Reser's was not obligated to pay that sum to

Schmieding.  But this legal contention is mistaken and deprives Movants of any entitlement to

judgment as a matter of law.

There is no dispute that Reser's received all 25 of the loads on which it is withholding payment. Statement of Additional Undisputed Facts ¶ 11. Reser's contends, however, that Schmieding is obligated to bear sole responsibility for all expenses allegedly incurred by Reser's as a result of Reser's handling of the Disputed Load which, Reser's alleges, totals $276,519.87. While Schmieding expressly denies this contention, it is clear that any setoff to which Reser's may be entitled is limited to the cost of the Disputed Load. Therefore, even if Reser's had some reasonable basis for withholding partial payment to Schmieding, it could never establish that it was justified in withholding all $276,519.87 due Schmieding, and would be required to pay the balance to Schmieding pursuant to PACA and the Uniform Commercial Code. Therefore, Movants, as the principals of Reser's who are in positions to control PACA trust assets, have liability to Schmieding for failure to make prompt payment of all sums owing under PACA.

1.      A Setoff May Only Be Applied to the Allegedly Breached Contract

Pursuant to Section 2-607 of the Uniform Commercial Code, as adopted in Kansas at K.S.A. § 84-2-607,[4] Reser's is obligated to pay the contract rate for any goods accepted. *Id.* This simple concept is the fundamental basis for all commerce: if a buyer accepts goods, it must pay for them. Of course, the UCC's purpose is to address exceptions to this rule. The only exception Reser's has asserted in this case is the right of setoff, codified at UCC Section 2-717, as adopted in Kansas at K.S.A. § 84-2-717. See, Complaint (Docket No. 1) (the "Complaint"). Under Section 2-717, the "buyer on notifying the seller of his intention to do so may deduct all or part of the damages resulting from any breach of the contract from any part of the price still

---

[4] Citations to Kansas' adoption of the UCC should not be construed as an admission that Kansas law applies in this dispute. On the contrary, the Contract specifies that it "shall have been deemed to have been made in Washington County, Arkansas and shall be governed by Arkansas law." Schmieding refers to Kansas statutes in this brief only as a means of convenience and out of a desire to avoid over-complicating this brief with a choice of law discussion. In any event, the reviewed potions of the UCC are largely identical as adopted in Kansas and Arkansas.

due <u>under the same contract</u>." *Id.* (emphasis added).[5]  Notably, there is no common law right of

setoff for transactions governed by the Uniform Commercial Code.  See, K.S.A. § 84-1-103;

*Kuhn v. Wagnon (In re Kuhn)*, 408 B.R. 528, 537 (Bankr. D. Kan. 2009) ("Application of a

Kansas common law rule to the contrary, if such existed, would be precluded by K.S.A. § 84-1-

103[b]"); *Microsize, Inc. v. Ark. Microfilm, Inc.*, 29 Ark. App. 49, 780 S.W.2d 574 (1989).

Since it is beyond contention that this transaction is anything other than a sale of goods between

merchants, K.S.A. § 84-2-102, any right of setoff exists solely by virtue of Section 2-717.

    Pursuant to Section 2-717, any damages resulting from breach may only be offset from

"any part of the price still due under the same contract."  *Id.*  In the instant case, each transaction

was memorialized in a separate purchase order and invoice.  Under such circumstances, each

transaction is the subject of a separate contract, and therefore Reser's cannot withhold

$276,519.87 in payment based on alleged damages incurred in connection with the Disputed

Load, the value of which was only $15,490.40.  Ex. D; *GFSI, Inc. v. J-Loong Trading, Ltd.*, 2006

U.S. Dist. LEXIS 89448, at *10 (D. Kan. Dec. 6, 2006) (05-cv-2302-KHV); *Sharp Elecs. Corp.*

*v. Arkin-Medo, Inc.*, 86 A.D.2d 817, 452 N.Y.S.2d 589, 590 (App. Div. 1982) ("each shipment

represents a separate agreement to purchase goods").  Even if this Court construes the Contract

as bringing each of the separate purchase orders and invoices into the same agreement, that

reasoning cannot apply to the Disputed Load since that transaction was not covered by the

Contract.  Pursuant to the Contract, Schmieding was only required to deliver six loads of celery

to Reser's in November, 2015.  Statement of Additional Undisputed Facts ¶ 12.  The Disputed

Load was the seventh load requested by Reser's during that period and therefore cannot be

---

[5] Schmieding does not concede that Reser's complied with the notice requirement of Section 2-717, but does not believe that this failure is germane to the instant analysis, and so omits a discussion here without prejudice to raise it in later pleadings if necessary.

considered to have been purchased under the Contract.  Statement of Additional Undisputed Facts ¶ 13.  Therefore, Reser's has no entitlement to a setoff of the full value of the twenty five loads it received from Schmieding because of damages it alleges it incurred on the Disputed Load.

Reser's is unlawfully withholding payment of sums owing under PACA, and Movants, the individuals who control Reser's purse strings, are directly prejudicing Schmieding's right to prompt payment.  As such, Movants have breached their fiduciary obligations to Schmieding and have individual liability for the debt.  Their motion should be denied as a matter of law.

## F.        Schmieding Is Entitled to Engage in Discovery

Based on the facts and law set forth above, this Court should simply deny the motion; however, in the event the Court believes the Motion may have merit, it should heed the Supreme Court's statement that Fed. R. Civ. P. 56 requires that motions for summary judgment "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5.   Rule 56(d) contemplates that if a nonmovant shows by "declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to … take discovery; or (3) issue any other appropriate order." *Id.*; see also, *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015).

In the instant case, the Motion is supported entirely by the Leavy Affidavit and its allegations that Reser's is holding sufficient funds to pay Schmieding.  As set forth above, Schmieding does not believe that, even if true, this would be enough to warrant judgment dismissing its claims against Movants; however, in the event this Court believes such a conclusion is warranted, it is respectfully submitted that Schmieding must at the very least be

entitled to conduct discovery to discern whether the allegations in the Leavy Affidavit are true. As set forth in the accompanying declaration from counsel, Schmieding must be permitted to obtain discovery concerning Reser's liquidity, Reser's preservation of PACA trust assets and its ability to pay any judgment entered in Schmieding's favor. Without such discovery, Schmieding will be wholly unable to present facts essential to justify its opposition on factual grounds, as opposed to the legal grounds set forth above. Entering judgment without such an opportunity would be contrary to controlling law. *Anderson*, 477 U.S. at 250 n.5.

## V.     CONCLUSION

Movants have failed to demonstrate any material facts that are uncontroverted. The sole piece of evidence offered in support of their motion, the self-serving and conclusory Leavy Affidavit, carries no weight on a motion for summary judgment and fails to demonstrate that Movants' have not violated either the prompt payment or the trust provisions of PACA. Nor have Movants established their entitlement to judgment as a matter of law since their decision to withhold all sums owing to Schmieding is unjustified under UCC § 2-717. Even if this Court thinks the Motion is not completely bereft of merit, Schmieding is entitled to conduct discovery to test the unsupported allegations in the Leavy Affidavit. Therefore, under no circumstances should the Motion be granted. On the contrary, Schmieding believes that if the Court searches the record, it can only conclude that Schmieding has a strong likelihood of success on its claims against Movants and Reser's.

**Dated:** **November 23, 2016**

MORRIS, LAING, EVANS, BROCK
& KENNEDY, CHARTERED

By: /s/ Ryan M. Peck
Ryan M. Peck, KS Bar No. 21223
300 North Mead, Suite 200
Wichita, Kansas 67202
Tel: (316) 262-2671
Fax: (316) 262-6226
rpeck@morrislaing.com

and

Gregory Brown, NY Bar No. 4366498
McCarron & Diess
707 Walt Whitman Road, Second Floor
Melville, New York 11747
Tel: (631) 425-8110
Fax: (631) 425-8112
gbrown@mccarronlaw.com
*Pro Hac Vice*

*Attorneys for H.C. Schmieding Produce Co., LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of November, 2016, a copy of the foregoing

Memorandum of Law in Opposition, together with all supporting papers, was served via email

upon the following at the email addresses indicated:

> Arthur E. Palmer
> Cynthia J. Sheppeard
> Goodell, Stratton, Edmonds & Palmer LLP
> Attorneys for Reser's Fine Foods, Inc.
> 515 South Kansas Avenue
> Topeka, Kansas 66603
> apalmer@gseplaw.com
> csheppeard@gseplaw.com

> **With chamber's copy mailed to:**

> Honorable Sam A. Crow
> United States District Court
> 444 S.E. Quincy, Suite 430
> Topeka, KS 66683

**Executed on November 23, 2016**

/s/ Ryan M. Peck
**RYAN M. PECK**

---

MEMORANDUM OF LAW OF IN OPPOSITION | 1