IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RESER'S FINE FOODS, INC.,

                Plaintiff,

      v.                                              No. 16-4150-SAC

H.C. SCHMIEDING PRODUCE CO., LLC.,
and C & E FARMS, INC.,

                Defendants.
_____

H.C. SCHMIEDING PRODUCE CO., LLC.,

                Third-party Plaintiff,

      v.

MARK A. RESER, PATRICIA J. RESER,
PAUL A. LEAVY, and SUNTERRA PRODUCE
TRADERS, INC.,

                Third-party Defendants.


MEMORANDUM AND ORDER

        This case comes before the court on the motion for summary judgment (Dk. 17) filed by the individual third-party defendants, Mark A. Reser, Patricia J. Reser, and Paul A. Leavy; on the motion for leave to file two exhibits under seal (Dk. 25) filed by the plaintiff Reser's Fine Foods, Inc. ("Reser's") and the individual third-party defendants; and on the motion for leave to file a surreply or conduct oral argument (Dk. 33) filed by the third-

party plaintiff H.C. Schmieding Produce Co., LLC. ("Schmieding"). The court will take up the motions in reverse order.

In September of 2016, Reser's filed this declaratory judgment action asking for an offset of $269,519.87, as the alleged damages incurred from first a "recall" and then a "hold" being placed on a load of celery supplied by Schmieding and C & E Farms, Inc. in November of 2015. Reser's complaint alleges that it did not receive notice of the recall and hold until after it had used the celery in fresh food products that were ready for shipment. Reser's also alleges it did not receive notice of the hold being lifted until after it had been required to destroy the finished product containing the celery and to replace the destroyed product.  (Dk. 1).

Schmieding filed an answer and four counterclaims against Reser's including two counterclaims for failure to pay trust funds and failure to make prompt payment pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, *et seq*. Schmieding also filed a cross-claim for indemnification against C & E Farms, Inc. Most important to the summary judgment motion now pending, Schmieding filed third-party claims against Mark A. Reser, Patricia J. Reser, and Paul A. Leavy for unlawful dissipation of PACA trust assets. These three individual third-party defendants are seeking summary judgment arguing that Reser's has adequate and readily available trust assets which mean that as a matter of

law there has been no dissipation of trust assets and there is no basis for secondary personal liability.

**Motion for Leave to File a Surreply (Dk. 33).**

The early filing of a summary judgment motion in this case has created some unique procedural issues. It also has generated some evidentiary objections on matters about which discovery has yet to occur. In response to Schmieding's memorandum opposing summary judgment, the individual third party defendants did submit arguments and evidence in their reply memorandum which the court regards as new even if offered in reply to Schmieding's arguments. The court finds these unusual circumstances justify Schmieding's filing of its attached surreply. The court has considered the surreply in its summary judgment ruling.

**Motion for Leave to File Exhibits Under Seal (Dk. 25).**

Movants seek leave to file under seal two exhibits:  Reser's consolidated balance sheet that reflects October totals for the years of 2015 and 2016 and the second affidavit of Paul A. Leavy that discusses, in part, figures from the balance sheet. (Dk. 25-1 and 25-2). As a privately held corporation, Reser's submits this balance sheet contains "confidential business information" that includes sensitive details about its financial condition which Reser's retains as private business information. While these allegations certainly leave room for more detail and explanation in the future, the court accepts for the limited purpose of these summary judgment

proceedings that Reser's general interest in keeping its financial condition private currently outweighs the public's presumed right of access to this information. This conclusion is largely influenced by Reser's general financial condition not having a significant or central issue in these immediate proceedings. Should this change, the court may invite an additional showing on confidentiality and reconsider its decision to seal. For now, the court grants the motion on this condition.

**Motion for Summary Judgment (Dk. 17).**

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, ___ U.S. ____, 134 S.Ct. 1861, 1866 (2014)(quoting Fed. R. Civ. P. 56(a)). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party has the initial burden of showing "the absence of a genuine issue of material fact," and, if carried, the non-moving party then "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *National American Ins. Co. v. American Re-Insurance Co.*, 358 F.3d 736, 739 (10th Cir. 2004) (internal quotation marks and citation omitted). At the

summary judgment stage, the court is not to be weighing evidence, crediting some over other, or determining the truth of disputed matters, but only deciding if a genuine issue for trial exists. *Tolan*, 134 S. Ct. at 1866. The court performs this task with a view of the evidence that favors most the party opposing summary judgment. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Liberty Lobby*, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Counsel for Schmieding has filed a declaration which includes a review of the procedural posture of this case. (Dk. 19-1). The declaration notes that the movants filed for summary judgment before filing their answer to the third-party claims. Additionally, there is no scheduling order in place, and Schmieding has yet to obtain discovery from the movants. At paragraph ten, Mr. Brown declares:

> Without such discovery, Schmieding is unable to test the assertions in the Leavy Affidavit, including the allegations concerning Reser's liquidity, Reser's preservation of PACA trust assets and its ability to pay any judgment entered in Schmieding's favor. As a result, Schmieding is wholly unable to present facts essential to justify its opposition on factual grounds. Notwithstanding the foregoing, Schmieding believes the Motion can and should be dismissed on legal grounds.

(Dk. 19-1, ¶ 10). Schmieding opposes summary judgment, in part, by asking that it "be permitted to engage in discovery to review evidence

exclusively in the control of the movant which evidence the movant contends

establishes undisputed material facts. Fed. R. Civ. P. 56(d)(2)." (Dk. 19, p.

7).

The Tenth Circuit recently addressed the operation of Rule

56(d):

> Rule 56(d) allows a nonmovant to show by affidavit or declaration
> that, for a specified reason, it cannot present facts essential to justify
> opposition to a motion for summary judgment. That is, it provides a
> means for a nonmovant to "ask the court to refrain from acting on the
> summary judgment request until additional discovery can be
> conducted." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1235 (10th Cir.
> 2007). Thus, Rule 56(d) serves a noticing function that "safeguards
> against an improvident or premature grant of summary judgment."
> See 10B Charles Alan Wright, Arthur R. Miller *et al.*, *Federal Practice &
> Procedure* § 2740 (3d ed. & Sept. 2016 Update) (footnote omitted).

*Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1226 (10th Cir. 2017). When

the non-movant is seeking discovery, the following applies:

> In the Tenth Circuit, a non-movant requesting additional discovery
> under Rule 56(d) "must specify (1) the probable facts not available,
> (2) why those facts cannot be presented currently, (3) what steps
> have been taken to obtain these facts, and (4) how additional time will
> enable [the party] to obtain those facts and rebut the motion for
> summary judgment." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238,
> 1249 (10th Cir. 2015).

*Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016).

This Rule 56(d) dispute concerns the movants' evidence that

Reser's current financial condition includes freely available and liquid assets

in an amount sufficient to satisfy the trust of $276,519.87, which

Schmieding claims has been created and held for its benefit under PACA. The

movants' evidence originally consisted of only the affidavit of Paul A. Leavy,

6

Reser's Chief Financial Officer ("CFO") and Treasurer. Leavy's affidavit states that as CFO and Treasurer, he is "required to know whether Reser's has freely available liquid assets in an amount sufficient to satisfy the $276,519.87." (Dk. 17-1, ¶ 7). Leavy further avers that Reser's has had "freely available liquid assets" in a sufficient amount since November of 2015 and that Reser's "has made arrangements to maintain freely available liquid assets in" in a sufficient amount "until such time as a complete and final resolution is reached for all claims made in this lawsuit." (Dk. 17-1, ¶ 10). For purposes of these proceedings, Schmieding summarily denies Leavy's affidavit saying that without discovery it "cannot know what is within Leavy's personal knowledge" and that "[b]ecause of the procedural posture of this case, . . . [it] cannot present facts essential to justify its denial" of Leavy's statements." (Dk. 19, pp. 2-3). Schmieding's Rule 56(d) presentation is deficient in not specifying "the probable facts not available" as to Reser's liquidity, Reser's preservation of PACA trust assets, and Reser's ability to pay any judgment entered in Schmieding's favor. *Gutierrez*, 841 F.3d at 908. Schmieding also objects to Leavy's affidavit as lacking any supporting financial documents.

    In reply, the movants asked to file under seal Leavy's second affidavit as supported by an averred "true and correct copy of the October 1, 2016, Consolidating Balance Sheet for Reser's Fine Foods, Inc. and Subsidiaries." (Dk. 25, Ex. B, and Dk. 29, p. 6). This order grants that

7

motion.  Leavy avers that the balance sheet "is a true and correct copy of the same document submitted to the federal bank with which Reser's does business" and "is a true and accurate statement of Reser's financial condition as of October 1, 2016." (Dk. 25, Ex. B, ¶¶ 10 and 11). Leavy's affidavit points to the first line item of "cash" on the balance sheet as showing "Reser's currently has readily available liquid assets on hand in an amount more than sufficient to satisfy" Schmieding's trust claim. (Dk. 29, p. 6). In its sur-reply, Schmieding objects that the balance sheet is inadmissible hearsay offered to prove the truth of the amounts found on the document. Schmieding disputes that movants have laid a sufficient foundation for the business records exception.[1] Even if admissible, Schmieding disputes that this record alone is enough to show Reser's current assets or to establish the availability of such assets to pay Schmieding at the close of the case.

The court will reserve ruling on the rest of these procedural questions until it has addressed Schmieding's PACA third-party claims and the law governing the elements of those claims. This is due to Schmieding asserting that Reser's liquidity is not dispositive of its third-party claims:

---

[1] As CFO, Leavy would know the financial documents prepared and submitted to the federal bank with which Reser's does business. Leavy said the balance sheet was a copy of one of these financial documents impliedly prepared and used to do business with a federal bank. For purposes of these summary judgment proceedings, Leavy's affidavit is undoubtedly succinct, but it is sufficient in showing the balance sheet was prepared as part of Reser's business activities with a federal bank, was kept and submitted as part of those regular business activities, and was based on information known by the CFO to be true and accurate. *See United States v. Fawaz*, 881 F.2d 259, 266 (6th Cir. 1989). Schmieding's hearsay objection is overruled.

> Even if the pre-answer and pre-discovery Motion was supported by adequate evidence, Movants could not prove that mere liquidity is enough to defeat Schmieding's claims. PACA requires prompt payment. The decision of Reser's principals to withhold payment from Schmieding for produce that was delivered, accepted, processed and resold by Reser's is a violation of PACA and is contrary to the requirements of the Uniform Commercial Code.

(Dk. 19, p. 7). Resolution of this question of law impacts the remaining procedural questions.

Statement of Undisputed Facts

The court regards the following facts to be undisputed for purposes of deciding this summary judgment motion. In February of 2015, Reser's contracted for Schmieding to sell it 91 truckloads of celery between February of 2015 and January of 2016 according to a monthly schedule of deliveries. For November of 2015, Schmieding was obligated to sell six loads of celery, but Reser's needed a seventh load delivered. So, Reser's issued a purchase order number 838903 to Schmieding for the seventh load which was delivered on November 11, 2015. On all of its invoices to Reser's, Schmieding included language for preserving its PACA trust rights pursuant to 7 U.S.C. § 499e(c)(4). Reser's has not paid Schmieding for the celery delivered on November 11, 2015.

Reser's alleges it did not make this payment because of the recall and hold notice on this disputed November load of celery. Reser's also alleges it has withheld additional payments as an offset for damages sustained as a result of this disputed load. It is undisputed that Reser's has

9

not paid Schmieding for $276,519.97 worth of produce, but Reser's did purchase and pay Schmieding for $1,084,396.00 worth of produce in 2015.

According to the affidavit of Reser's CFO, Paul A. Leavy, and to the consolidated balance sheet submitted in support of his affidavit, Reser's cash asset is more than sufficient to cover Schmieding's PACA trust claim.

<u>Third-Party Causes of Action</u>

For the three individual third-party defendants, Mark A. Reser, Patricia J. Reser, and Paul A. Leavy, Schmieding relies on the same central allegations. Schmieding sub-titles each of these three causes of action in parentheses as, "(Unlawful Dissipation of Trust Assets by a Corporate Official)." (Dk. 7, ¶¶ 100, 105, 110). All three causes of action allege the individual "operated Reser's during the relevant time period and, upon information and belief, is and was in a position of control over the PACA trust assets belonging to Schmieding." (Dk. 7, ¶¶ 101, 106, and 111). All three are alleged to have "failed to direct Reser's to fulfill its statutory duty to preserve PACA trust assets and timely pay Schmieding for the produce it supplied." (Dk. 7, ¶¶ 102, 107, 112). All three causes of action allege the individual's "failure to direct Reser's to maintain PACA trust assets and pay Schmieding for the produce it supplied was an unlawful dissipation of trust assets by a corporate official." (Dk. 7, ¶¶ 103, 108, 113). Finally, Schmieding concludes all three causes of action with the same allegation of injury, "As a result of said unlawful dissipation of trust assets, Schmieding

10

has been deprived of its right as a beneficiary in the produce trust and has

been denied payment for the produce it supplied." (Dk. 7, ¶¶ 104, 109,

114).

PACA Law

Understanding the scope, purpose and operation of the relevant

PACA provisions is helpful in interpreting Schmieding's claims and the

elements of proof. The court has found the following to be a complete and

concise summary:

> The Perishable Agriculture Commodities Act, which was enacted in 1930 to suppress unfair and fraudulent business practices in the marketing of perishable commodities, was amended in 1984 to provide unique credit protection to sellers of perishable agricultural commodities. Because sellers of perishable commodities had a need to move their inventories quickly, they were often required to become unsecured creditors of their purchasers, whose credit they were often unable to verify. . . .
>
> The 1984 amendments create, upon the sale of perishable agricultural commodities, a trust for the benefit of the unpaid sellers of the commodities on (1) the commodities, (2) the inventory or products derived from them, and (3) the proceeds of the inventory or products. 7 U.S.C. § 499e(c)(1)-(2); *see also* House Report at 3 (recounting congressional findings); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir.2003) (same). As amended, PACA requires that purchasers of perishable agricultural commodities maintain the trust by retaining the commodities or their proceeds until the commodities sellers are paid, and it makes it unlawful to "fail to maintain the trust as required." 7 U.S.C. § 499b(4). PACA confers jurisdiction on district courts to entertain "actions by trust beneficiaries to enforce payment from the trust." *Id.* § 499e(c)(5).
>
> The trust created by PACA is a "nonsegregated 'floating' trust" on perishable agricultural commodities and their derivatives until all sellers of such commodities are paid. 7 C.F.R. § 46.46(b). Because the governing regulations specifically contemplate the commingling of trust assets without defeating the trust, see id., the trustee of such a trust is permitted to convert trust assets into other property, provided that the trustee honors its obligation to "maintain trust assets in a

11

> manner that such assets are freely available to satisfy outstanding
> obligations to sellers of perishable agricultural commodities," *id.* §
> 46.46(d)(1). Any act inconsistent with maintaining the trust, including
> "dissipation" of trust assets, is deemed unlawful and a violation of
> PACA. *See* 7 U.S.C. § 499b; 7 C.F.R. § 46.46(d)(1). "Dissipation" is
> defined as "any act or failure to act which could result in the diversion
> of trust assets or which could prejudice or impair the ability of unpaid
> suppliers, sellers, or agents to recover money owed in connection with
> produce transactions." 7 C.F.R. § 46.46(a)(2).

*Nickey Gregory Co., LLC v. Agricap, LLC*, 597 F.3d 591, 594-95 (4th Cir. 2010). In sum, a commodities purchaser violates PACA by failing to retain in trust the commodities or their proceeds until the commodities seller is paid. This trust is a "nonsegregated floating trust" in which the commodities and their proceeds can be commingled or converted into other assets so long as the trust assets are maintained to be "freely available to satisfy outstanding obligations" to the commodities sellers. *Id.* Acting or failing to act with respect to the trust assets violates PACA if the assets are not maintained to be freely available to satisfy obligations but are diverted or if the unpaid sellers' recovery of the owed money is prejudiced by the dissipation of assets.

Schmieding's third-party claims against the individual third-party defendants are entitled claims for dissipation of PACA trust assets. Schmieding alleges the individual defendants failed to direct Reser's both to preserve and maintain Schmieding's PACA trust assets and to pay Schmieding for the produce. The court regards the following as a relevant

summary of individual liability under PACA based on the handling of trust

assets:

> The theme of the PACA trust devolves to this: to benefit producers of perishable agricultural items sold nationally to consumers, PACA places duties on those entrusted with such items for sale—the licensed sellers, or "middlemen" between producers and consumers—to prefer the producers over others. In the event of a breach of those duties, "liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable...." *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F.Supp. 703, 706 (E.D.Pa. 1994); *see also Golman–Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (same); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir.1997) (same).
>
> "Individual liability … is not derived from the statutory language, but from common law breach of trust principles." *Weis–Buy* [*Servs., Inc. v. Paglia*], 411 F.3d [415] at 421 [(3rd Cir. 2005)]; *see also Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010) ("General trust principles govern PACA trusts unless the principle conflicts with PACA."); *Sunkist*, 104 F.3d at 282 [(9th Cir. 1997)] ("Ordinary principles of trust law apply to trusts created under PACA...."). "'Under the common law, the trustee of a trust is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property.'" *Weis–Buy*, 411 F.3d at 421 (quoting *Shepard*, 868 F.Supp. at 706). Following these basic trust principles, " '[a]n individual who is in the position to control the [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.'" *Id.* (quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993) (second alteration in original)); see also Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott and Ascher on Trusts* § 24.2.1 (2007) ("[I]f the trustee has misappropriated trust funds due to a beneficiary, the trustee is liable in an action at law.").

*Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 167-68 (3rd

Cir. 2010). Thus, there may be secondary liability for an individual who is in

a position of control and breaches the trustee's fiduciary duty to preserve trust assets.

Movants seek summary judgment arguing that Schmieding cannot prove a breach of trust obligations in the dissipation of trust assets, as Reser's currently has freely available, liquid assets in an amount more than sufficient to satisfy Schmieding's trust claim. Movants assert there can be no basis here for asserting secondary liability when there is nothing that triggers primary liability for dissipation of assets.

Schmieding points to the PACA provisions that make it a violation for merely failing to make prompt payment for produce received. *See Pacific Intern. Marketing v. A & B Produce*, 462 F.3d 279, 282 (3rd Cir. 2006) (PACA makes it "unlawful for buyers of produce . . . to fail to make prompt payment for a shipment of produce." (internal citations omitted)). As the Third Circuit notes, a buyer's violation of this provision "triggers civil liability and the possible suspension or revocation of the buyer's PACA license." *Id*. But, "Congress later amended PACA to provide the additional remedy of a statutory trust provision for 'suppliers, sellers, or agents' against buyers who fail to make prompt payment." *Pacific Intern. Marketing,* 462 F.3d at 282 (citations omitted). The court believes this distinction in understanding the trust provision and associated fiduciary duties as an additional remedy is significant here.

14

Schmieding argues that individual liability arises, "because PACA creates a fiduciary relationship between the produce seller and purchaser," but it also recognizes these are bases in common law trust principles regarding fiduciary duties. (Dk. 19, p. 12). Schmieding concludes that courts have held officers or directors who had control over PACA trust assets "personally liable for failure to pay trust funds." (Dk. 19, p. 12). In short, Schmieding is positing that there is a fiduciary duty to make prompt payment. The cases cited by Schmieding, however, recognize personal liability not for failure to make prompt payment but for failure to preserve trust funds. *See Bear Mountain Orchards*, 623 F.3d at 169 ("secondarily liable for breaching the duty to preserve the PACA trust"); *Weis-Buy Servs.*, 411 F.3d at 420-21 (breach the "fiduciary duty to protect PACA trust assets"); *Golman-Hayden Co. v. Fresh Source Produce*, 217 F.3d 348, 351 (5th Cir. 2000) ("who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."); *Sunkist Growers*, 104 F.3d at 283 ("breach their fiduciary duty to preserve those assets"). In *Golman-Hayden*, the court explained that this liability "is premised on the breach of one's fiduciary duty to protect PACA trust assets by an individual who is in a position to control such assets." 217 F.3d at 351 n.18. Schmieding's position is, "Thus, an individual who controls a produce purchaser's purse strings can be liable to produce suppliers for violation of either the prompt payment

15

provisions or the trust provisions of PACA. *See, Hiller Cranberry Prods., et al., supra.*" (Dk. 19, p. 12).

The court does not read Schmieding's cited cases as showing individual liability for violating PACA's prompt payment provisions. Those cases stand for breach of fiduciary duty based upon the failure to preserve trust assets. *See Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999)(quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993)). Schmieding's reliance on *Bronia, Inc. v. Ho,* 873 F. Supp. 854, 861 (S.D.N.Y. 1995), is also misplaced. The court there found that the trustee had not maintained the assets as to be freely available to satisfy obligations but instead had relinquished control of the commodities without securing payment. The holding in *Bronia* emphasizes that the breach of fiduciary duty depends on keeping the trust assets "freely available." The *Bronia* decision does not involve PACA's prompt payment provisions. Schmieding's memorandum fails to provide legal authority for finding separate individual liability based simply on a violation of PACA's prompt payment provisions.

## Application and Conclusions

The court concludes that Schmieding's individual third-party claims are legally viable only in asserting secondary liability for breach of the fiduciary duty to preserve trust assets. Schmieding has not come forward with legal authorities that show individual legal liability exists for violating

PACA's prompt payment provisions. Schmieding's individual third-party claims depend on liability derived from common law breach of trust principles and are not derived from the statutory language. *Bear Mountain Orchards*, 623 F.3d at 167. Thus, Schmieding must allege and prove that the individual third parties failed to preserve PACA trust assets for the benefit of Schmieding. *Id.*

Schmieding's third-party claims for breach of fiduciary duties in failing to preserve PACA trust assets is governed by this law. The commingling of trust assets is expected.  A trustee "is permitted to convert trust assets into other property, provided that the trustee honors its obligation to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." *Nickey Gregory Co.,* 597 F.3d at 595. Thus, Schmieding must allege and prove an "act inconsistent with maintaining the trust." *Id.* at 595; *see* 7 C.F.R. § 46.46(d)(1)[2]. "Congress explained that 'the purpose of the trust is to increase the legal protection for unpaid sellers and suppliers . . . until full payment of sums due have been received by them." *H.C. Schmieding Produce v. Alfa Quality Produce,* 597 F. Supp. 2d 313, 315-16 (E.D.N.Y. 2009) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin*

---

[2]"Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act, (7 U.S.C. 499b)."

*Marketing Corp.*, 467 F.3d 238, 241 (2d Cir. 2006)). Thus, Schmieding must allege and prove that the trustees acted or failed to act inconsistent with maintaining the trust such that assets are not freely available to satisfy the outstanding obligations.

The movants seek summary judgment arguing that Reser's has maintained liquid assets freely available to satisfy any claim of outstanding trust obligations to Schmieding. More notable to the court is that Schmieding's third-party claims fail to allege the manner in which the trustees have failed to maintain trust assets such that they are not freely available to satisfy outstanding obligations to Schmieding. Such an allegation seems not only appropriate, but also necessary here, particularly when Schmieding has not alleged any circumstances that question Reser's financial solvency or financial ability to maintain trust assets. This is not a case in which the financial insolvency or incapacity of the purchaser is accepted, given, questioned, or alleged. Instead, this is a case in which the unpaid supplier makes no relevant allegations about the purchaser's financial capacity or about the purchaser diverting trust assets such that they are not freely available to satisfy trust obligations. Instead, the supplier appears to admit that it is not in a position to dispute or even question the purchaser's evidence showing it to be financially stable and quite capable of paying through cash the asserted trust obligations. Thus, the court finds that Schmieding has failed to allege a viable breach of fiduciary duty claim

18

against the individual third-party defendants for failing to maintain trust assets.

The procedural juncture of this case weighs against granting summary judgment. The need for discovery certainly depends upon there being first alleged a viable claim warranted under existing law and based on factual contentions having or likely to have evidentiary support after a reasonable chance for investigation or discovery. Therefore, dismissal is appropriate here for failure to allege a viable claim of breach of fiduciary duty for failure to maintain or preserve trust assets. The court, however, will give Schmieding the opportunity to amend its third-party individual claims on the condition that it first files a separate motion seeking leave to amend which satisfies the conditions for granting leave and is consistent with Fed. R. Civ. P. 11(b).

IT IS THEREFORE ORDERED that the motion for leave to file two exhibits under seal (Dk. 25) filed by Reser's and the individual third-party defendants is granted on the condition stated above;

IT IS FURTHER ORDERED that Schmieding's motion for leave to file a surreply (Dk. 33) is granted, and the court considered the same in its ruling here;

IT IS FURTHER ORDERED that the motion for summary judgment (Dk. 17) filed by the individual third-party defendants is treated as

a motion to dismiss for failure to state a claim for relief and is granted upon

the conditions stated above.

Dated this 1st day of March, 2017 at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge